FRANKLIN McVEIGH v. WILLIS D. SHERWOOD, CECILIA I. SHERWOOD ET AL.

47 544
118 14

*Mortgage—Sale of lands—Application of payments in inverse order of alienation.*

The rule *recognized* that when lands subject to a mortgage are alienated by the mortgagor in parcels, they must be applied to the satisfaction of the mortgage in the inverse order of alienation.

When lands which had been thus sold were subject to two mortgages, and the proceeds of the last parcel sold were applied upon the first of the mortgages, and as a part of the same arrangement the mortgagee in the second who was mortgagor in the first and under obliga-

tions to pay it, assigned the second to a party who was to hold it for the protection of the fee against another specified claim, but this party afterwards sold it for value to one who took it in good faith: *Held,* that under the rule above mentioned the mortgage was to be deemed satisfied in the first arrangement; and the second assignment not being with consent of the owner of the fee the assignee took nothing thereby.

Appeal from Berrien. Submitted Jan. 12. Decided Jan. 25.

FORECLOSURE. Defendant Cecilia appeals. Reversed.

*Clapp & Fyfe* for complainants.

*E. Bacon* and *J. A. Eastman* for defendant appellant.

COOLEY, J. This is a foreclosure case. The mortgage was given by Willis D. Sherwood to Charles R. Brown, upon an eighty acre lot of land, to secure the payment of a promissory note of $500, dated December 22, 1869, and due in one year thereafter. Brown assigned the securities to William D. Sherwood in 1876, and the latter assigned to complainant in May, 1877. This last assignment was for value, and complainant took the papers in good faith, and in the belief that they were valid securities.

By arrangement between Brown and William D. Sherwood the south part of the eighty acre lot was released from the mortgage, and it is only sought to enforce it now against the north half, the fee of which is owned by the defendant Cecilia I. Sherwood. She resists a foreclosure, claiming to have had a complete equitable defense to the mortgage when held by William D. Sherwood, and that the defense holds equally good against any one claiming by assignment from him.

The equities of this defendant rest upon a supposed obligation on the part of William D. Sherwood to protect her against encumbrances on the land at the time she became owner of the fee, and also upon facts which are supposed to constitute a satisfaction of this mortgage at the time an assignment of the same was made by Brown.

The title of defendant Cecilia I. Sherwood is derived through a deed from Charles R. Brown to Willis D. Sherwood, bearing date December 21, 1869. This was a warranty deed, but the land conveyed, together with certain other parcels, was then subject to a mortgage given by Brown to one Taylor to secure the payment of $2400. This mortgage was not paid, nor the land embraced in the Brown mortgage released from the lien thereof until after defendant Cecilia had acquired her title. When she received conveyance, therefore, the land deeded to her was subject to the Taylor mortgage, and the Brown mortgage, and there was also a third mortgage to one Jordan, which defendant Cecilia paid or purchased, and caused to be assigned to her mother to be held for her as a protection against the Brown mortgage which was supposed to be subject to it. The mother, however, after receiving an assignment, showed a disposition to retain it, and it was necessary for defendant Cecilia to resort to a suit in equity to obtain it.

The chain of conveyance to Cecilia of the land now held by her is as follows after that by Brown above mentioned: Willis D. Sherwood to Helen D. Eastman, deed of warranty dated October 7, 1870; Helen D. Eastman to Cecilia I. Sherwood, deed with covenant against the grantor's own acts, dated April 7, 1871. There is evidence in the case to justify the belief that Willis D. Sherwood received the conveyance from Brown in the interest and for the benefit of William D. Sherwood, who is his father, and that in all the subsequent transactions he dealt with the land as his father directed. There was, however, no writing between them to show any trust, and the father would have been unable to enforce as against him any interest in the lands whatever, or in the proceeds of sales.

If William D. Sherwood had been the grantor of the lands instead of his son, he would have been under legal obligation to protect his grantee and her assigns against the encumbrances. But as we have seen he was not the grantor, and he was not in position to claim any interest in the lands, either legal or equitable. It is possible that defend-

.ant Cecilia relied upon him to see that her lands were released from the lien of the Taylor and Brown mortgages, but as he had assumed no legal obligation, the reliance was one that rested in honor only.

The assignment of the mortgage now in suit by Brown to William D. Sherwood was part of an arrangement under which the lands described in it were released from the Taylor mortgage. This was brought about by William D. Sherwood making a considerable payment on the Taylor mortgage, in consideration of which Brown assigned his mortgage and gave a note for a balance. It is claimed by the defendants that this was a satisfaction of the Brown mortgage, and that it was only apparently kept alive at the time by assignment to William D. Sherwood as a protection against the Jordan mortgage. William D. Sherwood himself testifies that this was the case; and if he is believed, the subsequent transfer to complainant, if valid, was a fraud upon the defendants.

It is plain enough on the evidence, however, that the assignment of the mortgage by Brown to William D. Sherwood was understood and assented to by the defendants; and if the assignment had been brought about by the use of his own means, or means to which the defendants had no equitable claim, he might lawfully have dealt with the mortgage as freely as might any other purchaser. The evidence, however, shows that this was not the fact. The moneys paid by him on the Taylor mortgage, whereby he was enabled to obtain an assignment of the Brown mortgage, were obtained by means of a sale made by Willis D. Sherwood, October 7, 1872, of twenty-seven acres of the south half of this same eighty acre lot, to Helen D. Eastman. As the north half of the lot had been previously sold, and was then owned by the defendant Cecilia, and as this twenty-seven acres in the hands of Willis D. Sherwood was in equity chargeable with all the mortgages so far as was necessary for the protection of the north half, it follows that the proceeds received from the twenty-seven acres, when applied in any way upon the mortgages or any of them,

must in equity go to relieve the north half from the lien of the mortgages, and no assignment of the mortgage without the consent of Cecilia could deprive her of the benefit of this application.  This is the result of an application of the familiar principle that when lands which are subject to a mortgage are alienated in parcels, the parcels are to be charged for the satisfaction of the mortgage in the inverse order of alienation.  *Cooper v. Bigly* 13 Mich. 463; *Ireland v. Woolman* 15 Mich. 253; *McKinney v. Miller* 19 Mich. 142; *Sibley v. Baker* 23 Mich. 312.

There is no evidence connecting either of the defendants with the sale of the mortgage to complainant, and they are not estopped by any act of theirs from setting up as against him the defense that it has been satisfied.  Their consent that it might be held by William D. Sherwood as a protection against the Jordan mortgage was not a consent to any other use of it.  It was long past due when complainant bought it, and he therefore took all risks.

The decree must be reversed with costs of both courts and the bill dismissed.

The other Justices concurred.